IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIEL MANNION,

                Plaintiff,

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Case No. 1:17-cv-00008-MA

OPINION AND ORDER

TIM WILBORN
P.O. Box 370578
Las Vegas, NV 89137

    Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

ERIN F. HIGHLAND
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Daniel Mannion seeks judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the decision of the Commissioner is affirmed.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed his DIB application on June 26, 2013, alleging disability beginning September 30, 2006, due to hidradenitis suppurativa ("HS"), pilonidal disease, and hernia. Plaintiff subsequently amended his alleged onset date to October 1, 2009. Tr. Soc. Sec. Admin. R. ("Tr.") 29-30, ECF No. 9. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on June 10, 2015, at which Plaintiff appeared with his attorney and testified. A vocational expert, Lynn A. Jones, also appeared at the hearing and testified. On July 17, 2015, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.[1]

Plaintiff was born in 1964, and was 45 years old on the amended alleged onset of disability date and 50 years old on the date of the hearing. Plaintiff has completed four years of college, and has worked in the past as an internet systems operator and a small business owner. Tr. 48, 209.

---

[1] Plaintiff previously was found not disabled in a decision dated September 30, 2009. Tr. 12. The ALJ determined that Plaintiff successfully rebutted the presumption of continuing non-disability under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), because he alleged an impairment not previously considered (hernia) and his applicable age category changed. Tr. 12-13.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

Plaintiff meets insured status requirements for a DIB application through December 31, 2018. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his amended alleged onset date. At step two, the ALJ found Plaintiff has the following severe impairments: hidradenitis suppurativa[2] and a history of hernia. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform a range of light work but with the following limitations:

> he is further limited to tasks involving no more than frequent balancing, and no more than occasional kneeling, crawling, crouching, stooping, or climbing.

---

[2] Hidradenitis suppurativa ("HS") is a rare, long-term skin condition that features small, painful lumps under the skin. They typically develop where the skin rubs together, such as the armpits, the groin, between the buttocks, and under the breasts. The lumps may break open and smell or cause tunnels under the skin. HS can persist for many years and worsen over time, with serious effects on daily life and emotional well-being. http://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306 (last accessed Nov. 16, 2017). *Id.*

Tr. 15. At step four, the ALJ found that Plaintiff is able to perform his past relevant work as an internet systems operator and small business owner. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act at any time from October 1, 2009 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this Court, Plaintiff contends the following errors were committed: (1) the ALJ erred at step three in failing to find his HS meets or equals Listing 8.06; (2) the ALJ improperly evaluated his testimony; and (3) the ALJ failed to include all credible evidence in the hypothetical question to the vocational expert. The Commissioner argues that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "'Substantial evidence is more than a mere scintilla but, less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be

affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## DISCUSSION

**I.    The ALJ Did Not Err at Step Three**

*A.    Step Three Standards*

The claimant has the burden of proving that an impairment meets or equals a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-33 (1990). The "Listing of Impairments" generally describes impairments that are so severe as to be considered presumptively disabling, without further consideration of a claimant's residual functional capacity, past relevant work, or other jobs. 20 C.F.R. § 404.1520(d); *Staggs v. Colvin*, Case No. 6:15-cv-01060-MC, 2016 WL 4942002, at *4 (D. Or. Sept. 14, 2016). A diagnosis of a listed impairment is not sufficient. 20 C.F.R. § 404.1525(d); *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). To "meet" a listed impairment, a disability claimant must establish that his condition satisfies the severity of each element of the listed impairment in question, as well as the duration requirement for that particular listing. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *Zebley*, 493 U.S. at 530 (holding that a claimant "must meet all of the specified medical criteria"). To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the most similar listed impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526); *Kennedy*, 738 F.3d at 1176.

*B.   Analysis*

At step three, the ALJ made the following findings:

> The undersigned has given particular consideration to section 8.06 (hidradenitis suppurativa). [Plaintiff's] skin condition, while severe, does not meet or medically equal the criteria set forth in this listing.

Plaintiff contends the ALJ's limited discussion of Listing 8.06 at step three failed to articulate a "proper rationale" for finding he did not meet or equal the listing. Plaintiff argues that the medical evidence establishes that he has extensive skin lesions bilaterally on his groin, thighs, axillae, and perineum that have persisted despite treatment and therefore he meets Listing 8.06. Additionally, Plaintiff argues that his HS flare-ups are frequent and that his combined impairments are severe enough to equal the Listing 8.06. Although Plaintiff is correct that the ALJ's analysis at step three is perfunctory, Plaintiff's arguments ultimately fail for several reasons.

First, an ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, an ALJ is not required to provide that analysis under a particular heading; rather, the ALJ's decision may be viewed as a whole. *Id.; Kennedy,* 738 F.3d at 1178; *Conley v. Berryhill*, Case No. 1:16-cv-944-GSA, 2017 WL 4310249, *8 (E.D. Cal. Sept. 28, 2017) (holding ALJ's error in failing to provide detailed examination of Listing 8.05 at step three was harmless because later evaluation of medical evidence was supported by substantial evidence).

In the decision, the ALJ sufficiently discussed and evaluated the medical evidence before concluding that Plaintiff does not meet Listing 8.06. Listing 8.06 requires evidence of "extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. § 404, Subpart P, App. 1 § 8.06. For

purposes of Listing 8.06, Listing 8.00(C)(1) defines "extensive skin lesions" as "those that involve multiple body sites or critical body areas, and result in very serious limitation." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.00(C). The Listing further explains that extensive skin lesions resulting in "serious limitation" include those that "interfere with the motion of joints or use of extremities," and "lesions on . . . the perineum, or both inguinal areas that very seriously limit" one's ability to ambulate. *Id.* at § 8.00(C)(1); *see Conley*, 2017 WL 4310249 at *6-7 (discussing the requirements of Listing 8.00 for skin disorders, including the severity of skin lesions); *Siapno v. Astrue*, Case No. C 10-00127-SI, 2010 WL 5399218, *5 (N.D. Cal. Dec. 23, 2010) (same).

The ALJ thoroughly discussed the medical evidence from several providers when evaluating Plaintiff's RFC. For example, the ALJ discussed medical records from a dermatologist in early 2012 showing that Plaintiff ambulated with a normal gait and had no musculoskeletal problems, and that he appeared alert and comfortable. Tr. 17, 323-24. The ALJ discussed evidence from William Hughes, D.O., who conducted a consultative examination in May 2012 who observed HS in the parascrotal region in various stages of healing. Tr. 17, 389. As the ALJ correctly indicated, Dr. Hughes found on examination that Plaintiff had a normal gait, with no difficulty walking, sitting or standing, and had full strength and range of motion in all extremities. Tr. 17, 389. The ALJ discussed medical records from David Oehling, M.D., a physician who advised Plaintiff regarding potential surgical repair of his inguinal hernia in November 2013. Tr. 17, 262. As the ALJ discussed, Dr. Oehling noted that Plaintiff's inguinal hernia was complicated by his HS, but surgical hernia repair proved unnecessary because his hernia was reducible with antibiotic treatment, and Plaintiff's symptoms improved in two weeks. Tr. 17, 264. The ALJ correctly observed, no treating provider has opined that Plaintiff is unable to sustain employment. As the ALJ's evaluation makes

clear, Plaintiff's medical records fail to demonstrate that his HS causes serious limitation in his joints, extremities, or ability to ambulate. The ALJ's evaluation of the medical evidence is wholly supported by substantial evidence and is unchallenged by Plaintiff. This explanation alone satisfies the ALJ's conclusion that Plaintiff's HS does not meet Listing 8.06.

Second, even assuming *arguendo* that ALJ erred in failing to provide a detailed analysis at step three, the error is harmless. *Molina,* 674 F.3d at 1115. As the Commissioner correctly highlights, Plaintiff identifies no medical evidence that shows he has experienced persistent lesions for any three month period of time in order to satisfy the durational requirement. Listing 8.00(H) explains: "if you do not have continuing treatment as prescribed, if your treatment has not lasted for at least 3 months, or if you do not have extensive skin lesions that have persisted for at least 3 months, your impairment cannot meet the requirements of these skin disorder listings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8:00(H)(1); *see Peabody v. Colvin,* Case No. 1:14-cv-1433-SMS, 2016 WL 538377, *5 (E.D. Cal. Feb. 11, 2016) (discussing requirements for hidradenitis suppurativa in Listing 8.06). Indeed, the Court's review of the medical evidence does not reveal any treatment or lesions that have lasted for three months. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.00(G) (noting that the "longitudinal medical record" must show that your lesions have been at listing level for at least three months despite treatment). Plaintiff testified that he experiences outbreaks with severe pain rendering him bedridden for three to five days every six to eight weeks. However, lesions lasting three to five days simply do not satisfy the three-month listing criteria. *See Peabody,* 2016 WL 538377 at *6 (finding lesions lasting for 10 days did not meet Listing 8.06). Moreover, as the ALJ discussed, Plaintiff's contention that he experiences such severe outbreaks every six to eight weeks is simply not supported by the medical record. As the ALJ discussed, Plaintiff's use of oral

antibiotics and antibacterial wipes have been effective in controlling his HS flare-ups, and his treatment has been intermittent. Tr. 17-18, 67. Furthermore, as will be discussed below, the ALJ found Plaintiff's testimony about the severity of his symptoms less than fully credible.

Plaintiff argues that the ALJ did not specifically discuss the duration requirement when finding that his HS does not meet Listing 8.06, and that the Commissioner's contention amounts to a *post hoc* rationalization. The Court disagrees. Absent identification of some medical evidence by Plaintiff that he satisfies *all* the listing criteria – including the durational requirement – the ALJ's failure to discuss it is harmless error at best. *Molina*, 674 F.3d at 1115 (holding the court may not reverse for errors that are inconsequential to the ultimate nondisability determination); *Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) (reviewing court may not reverse for harmless errors unless the court can "confidently conclude that no reasonable ALJ . . . could have reached a different disability determination). Here, the ALJ found other medical evidence of the listing criteria lacking, and the ALJ's failure to provide additional detail as to why Plaintiff does not meet Listing 8.06 would be superfluous. Thus, any alleged error at step three is harmless.

Third, Plaintiff's contention that his impairments equal Listing 8.06 is without merit. As the Ninth Circuit has recognized, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683. At the hearing, Plaintiff did not advance any argument as to how his HS, pilonidal disease, and hernia combine to equal Listing 8.06. Tr. 29, 50. Given that Plaintiff did not advance such an argument to the ALJ, the ALJ did not err in failing to consider it. *Kennedy*, 738 F.3d at 1178 (rejecting contention that ALJ erred in failing to consider equivalency argument when equivalency not

presented to ALJ); *Alleyne v. Colvin*, Case No. ED CV 14-1434-E, 2015 WL 1401875, *4 (C.D. Cal. Mar. 26, 2015) (rejecting claimant's argument that ALJ failed to provide a "proper explanation" for failing to meet or equal listing).

Finally, to the extent that Plaintiff argues that his HS flare-ups alone are equivalent to Listing 8.06, this contention similarly fails. Listing 8.00(C)(2) states that if a claimant has frequent flare-ups, his impairment may be medically equal to a listing even though he has some periods during which the condition is in remission. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.00(C)(2). To establish equivalence, an ALJ may consider the frequency and seriousness of flare-ups, how quickly they resolve, and how a claimant functions between flare-ups to determine whether he has "been unable to do any gainful activity for a continuous period of at least 12 months or can be expected to be unable to do any gainful activity for a continuous period of at least 12 months." *Id; see also Saipno*, 2010 WL 5399218 at *5 (rejecting claimant's argument that frequent psoriasis flare-ups medically equalled Listing 8.05 because he did not identify record evidence establishing inability to perform work for 12 continuous months). In his briefing, Plaintiff fails to identify any medical evidence demonstrating how he satisfies this requirement. Plaintiff relies upon his own testimony that he experiences flare-ups every six to eight weeks, but as discussed below, the ALJ appropriately discounted his credibility. The ALJ's interpretation of the record is reasonable, and will not be disturbed. *See Molina*, 674 F.3d at 1111 (noting reasonable interpretations must be upheld); *Gaston v. Comm'r Soc. Sec. Admin.*, 577 F. App'x 739, 741 (9th Cir. 2014) (concluding ALJ did not err in failing to give extensive analysis on equivalence where medical evidence was lacking).

For all these reasons, the ALJ's conclusion that Plaintiff does not meet or equal Listing 8.06 is supported by substantial evidence, and free of harmful legal error.

## II.     The ALJ Did Not Err in Assessing Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina*, 674 F.3d at 1112; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014); *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, and effectiveness or

adverse side effects of any pain medication.[3] *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified that it is primarily his pain from HS that prevents him from working. Tr. 31. Plaintiff stated that his HS causes abscesses that can grow to be almost baseball sized, and occur in his armpits, groin, and buttocks. Tr. 32. Plaintiff testified that he is currently working 10 hours a week at the sportswear company he owns with his wife. Tr. 32. Plaintiff stated that most of his work is conducted online, and that he buys and sells alphabet letters for athletic jerseys. Tr. 33.

Plaintiff testified that he has developed a hernia, and that in the previous few months his condition has improved. Tr. 34. Plaintiff testified that for three to five days every six weeks or so he is bedridden due to swelling from HS. Tr. 36-37. Plaintiff stated that he changes positions from lying down, to sitting, then lying down again. Tr. 37. When his HS is not bothering him, he can perform typical chores such as mowing the lawn and working. Tr. 37. Plaintiff testified that his HS is chronic and resistant to treatments and antibiotics. Tr. 39. Plaintiff testified that depending upon his HS, he can work at a computer for up to six hours, but if his HS is flaring, not at all. Tr. 40. Plaintiff estimated he could work up to six hours a day on a computer ten times a month. Tr. 40.

---

[3] The Court observes that on March 28, 2016, Social Security Ruling ("SSR") 16-3p became effective, and it eliminated the use of the term "credibility." The ALJ's decision in this case was issued July 17, 2015. The Court has previously determined that SSR 16-3p does not apply retroactively because 42 U.S.C. § 405(g) does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking. *Smith v. Colvin*, No. 6:15-cv-01625-MA, 2017 WL 388814, at *4 n.2 (D. Or. Jan. 27, 2017). *See, e.g., Wright v. Colvin*, No. 15-cv-02495-BLF, 2017 WL 697542, *9 (N.D. Cal. Feb. 22, 2017) (holding SSR 16-3p does not apply retroactively); *Thayer v. Colvin*, No. 2:16-cv-00545-DWC, 2017 WL 132450, at *7 (W.D. Wash. Jan. 13, 2017) (same). The Court adheres to that rationale here.

Plaintiff testified that he takes ibuprofen for pain and swelling, and uses medicated baths and topical creams for treatment of his HS. Tr. 43. Plaintiff testified that he must wear loose-fitting clothing and that his wife does the shopping. Tr. 44. Plaintiff stated that he is unable to work at even a sedentary job due to his pain and inability to walk, and that his pain prevents him from concentrating. Tr. 45. Plaintiff further testified that he takes oxycodone or hydrocodone for pain. Tr. 45.

In a September 17, 2013 Function Report - Adult, Plaintiff indicated stated that he is unable to get out of bed sometimes, and frequently is unable to walk, stand, or sit, and is unable to move quickly. Tr. 227. Plaintiff stated that he is only pain free ten percent of the time. Tr. 227. Plaintiff provided that in 2009, his HS has spread to his armpit, has limited his range of motion, and that the cycle of cysts draining, drying, and ripping prohibits him from working most of the time. Tr. 227.

Plaintiff stated that in a typical day, he will wake and shower, needs help getting dressed from his wife, then if feeling up to it, will assist with taking care of his children. Tr. 228. Plaintiff stated that he cannot use his arm and needs help dressing and washing his hair. Tr. 229. Plaintiff stated that when he is bedridden, he is unable to perform any self-care. Tr. 229. Plaintiff stated he is able to prepare simple meals without assistance. Tr. 229. Plaintiff provided that ten percent of the time, he is able to do most chores slowly, and 50 percent of the time, can do chores one-handed, such as vacuuming, and can sit on the riding lawnmower two times a month. Tr. 230.

Plaintiff stated that he goes outside multiple times a day when he can, can drive short distances weekly, and use an AFTV to get around on his property. Plaintiff stated he drives with his left hand because his right arm bothers him. Tr. 230. Plaintiff stated he is able to shop online and in stores for groceries and household goods. Tr. 230.

Plaintiff stated that his HS affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, follow directions, use his hands, and get along with others. Tr. 232. Plaintiff estimated that he can walk 100 feet, can pay attention for 30 minutes, can follow written instructions, can follow short spoken instructions, gets along well with authority figures, and is unable to handle the stress caused by his pain. Tr. 233. Plaintiff further stated that oxycodone and hydrocodone have negative side effects, including nausea, fear, drowsiness, and dizziness. Tr. 233.

In a Disability Report - Appeal, dated January 21, 2014, Plaintiff indicated his hernia worsened with more swelling, pain and much larger bulge that presses on his iguinal HS and causes pain. Tr. 235. Plaintiff stated that his HS worsened and spread, with constantly open wounds in his left groin and right underarm. Tr. 235. Plaintiff described that he is in constant pain and his movement is restricted. Tr. 235. Plaintiff stated that he takes oxycodone and hydrocodone for intolerable pain, and that he is using leftover medications from earlier prescriptions. Tr. 238. Plaintiff testified that he uses tramadol for moderate pain, and ibuprofen for swelling and mild pain, and that he uses lidocaine, benzocaine, and prilocaine topically. Tr. 238. Plaintiff further stated that the oxycodone and hydrocone make him nauseous, the tramadol makes him dizzy, and the lidocaine makes him less ambulatory. Tr. 238.

In the decision, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible, providing multiple reasons. First, the ALJ found that Plaintiff's skin condition is long-standing, and that there was no indication of a sudden worsening of symptoms in 2009. An ALJ may discount a claimant's testimony if there is substantial evidence to support the conclusion that the claimant was capable of working with the

same impairment prior to filing to benefits. *See Delaplain v. Comm'r Soc. Sec. Admin.*, Case No. 2:15-cv-02439-HZ, 2017 WL 1234133, *8 (D. Or. Mar. 17, 2017) (determining ALJ appropriately discounted claimant's testimony where claimant had long-standing back problems, but was able to sustain work for many years); *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1998) (noting that "substantial evidence" indicated that claimant's condition "had remained constant for a number of years and that her back problems had not prevented her from working over that time."); *see also Wikoff v. Astrue*, 388 F. App'x 735, 737 (9th Cir. 2010) (upholding ALJ's conclusion that claimant was able to perform substantial gainful activities while suffering mental impairments as severe as those she suffered later, after her alleged onset date).

Here, the ALJ discussed that Plaintiff told a dermatologist in 2015 that he had been diagnosed with HS in 1982, and had undergone multiple treatments. Tr. 17, 308. As the ALJ observed, Plaintiff's alleged recurrent abscesses did not prevent him from engaging in substantial gainful activity for many years prior to Plaintiff's amended alleged onset date of October 1, 2009. Tr. 17, 189. Moreover, as the ALJ correctly observed, there is no medical evidence suggesting that Plaintiff's condition suddenly declined in September 2009. Tr. 17.

Plaintiff contends that the ALJ erred because the record demonstrates that he had active HS lesions in his groin in 2009, as well as scars from prior lesions. Tr. 311-12. Contrary to Plaintiff's suggestion, the evidence he cites does not show active HS lesions in 2009. Tr. 312. Plaintiff cites a consultative examination performed by David Wiegman dated April 18, 2009. Dr. Wiegman's treatment notes indicate that Plaintiff informed him of a long history of HS and pilonidal cysts dating back to his teenage years. Tr. 311. Additionally, while Dr. Wiegman indicated that Plaintiff had scarring consistent with HS, Dr. Wiegman further observed that "he does not have any active boils

or cysts today." Tr. 313. Thus, the Court concludes that ALJ's findings are fully supported by substantial evidence and provides an appropriate basis for discounting Plaintiff's credibility.

Plaintiff also suggests that the ALJ erred in requiring him to demonstrate a worsening in 2009 following a prior Social Security denial in 2009. Plaintiff's argument misses the mark. The ALJ did not require that Plaintiff demonstrate his condition worsened as compared to the 2009 disability denial. Rather, the ALJ could reasonably conclude that he had worked at SGA levels with his HS condition for multiple years prior to his alleged onset date of October 2009. It is reasonable for the ALJ to conclude that absent some evidence that his condition has declined, his condition would not prevent him from continuing to perform work at SGA levels. *Batson*, 359 F.3d at 1193 (reasonable interpretations of the evidence must be upheld). Furthermore, even assuming *arguendo* the ALJ erred in relying on this particular rationale, as discussed below, the ALJ has provided multiple other reasons, backed by ample record support, that provide clear and convincing reasons for discounting Plaintiff's credibility. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (even if ALJ erred in discrediting claimant's testimony, if remaining reasons still amount to clear and convincing evidence, crediblity determination must be upheld).

Second, the ALJ discounted Plaintiff's credibility based on significant inconsistencies with the medical record. Inconsistencies between a claimant's allegations and the medical record is a permissible reason to discount a claimant's testimony. *Batson*, 359 F.3d at 1197; *Tommasetti*, 533 F.3d at 1039 (ALJ may consider prior inconsistent statements concerning symptoms and other testimony when evaluating credibility); *see also Perez v. Astrue*, 247 F. App'x 931, 934 (9th Cir. 2007) (holding ALJ appropriately discounted claimant's testimony where claims of severe medication side effects were not supported by medical record). For example, the ALJ found

Plaintiff's alleged adverse medication side effects in Plaintiff's application materials are unsupported by the medical record. The ALJ's findings are fully supported in the record as whole. As the ALJ discussed, Plaintiff complained of numerous side effects from pain medication, including extreme nausea, drowsiness, and dizziness. Tr. 17, 233. Yet, as the ALJ accurately indicated, Plaintiff's alleged side effects are not corroborated by any medical provider. Tr. 17. Plaintiff does not identify a single instance of reporting these alleged side effects to a treatment provider, and the Court's careful review of the record likewise fails to reveal any such report. Accordingly, the Court concludes the ALJ's interpretation of the record is reasonable and will not be disturbed. *Molina*, 674 F.3d at 1111.

Additionally, the ALJ detailed that contrary to Plaintiff's allegation of being "bedridden" by his symptoms, such extreme limitations are not documented in his medical records. For example, contrary to Plaintiff's contention that he is unable to stand or walk, the ALJ cited treatment notes in early 2012 showing that Plaintiff was awake, alert, appropriate, fully oriented, and in no acute distress. Tr. 286-88 (repeated at Tr. 361-67). Additionally, the ALJ discussed multiple reports of Plaintiff having a normal gait, with no apparent musculoskeletal problems, and being "alert" and "comfortable" upon examination. Tr. 291-92, 294, 298 (repeated at Tr. 323, 333, 377). The ALJ's findings are wholly supported by substantial evidence. Therefore, the Court concludes the ALJ reasonably discounted Plaintiff's credibility based on the significant inconsistencies between the severity of Plaintiff's allegations and the lack of support in the medical record.

Third, the ALJ found the relatively benign clinical findings undermined Plaintiff's allegations of disabling levels of pain. Contradiction with the medical record is a valid credibility consideration. *Carmickle*, 533 F.3d at 1161; *Burch*, 400 F.3d at 680-81 ("Although lack of medical evidence cannot

17 - OPINION AND ORDER

form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Here, the ALJ discussed that in May 2012, William Hughes, D.O., conducted a consultative examination, and observed HS in various stages of healing. Tr. 17, 387. Dr. Hughes observed HS in the right axillae and right periscrotal region, with inflammation on the left periscrotal region. Tr. 387. Dr. Hughes also observed remnants of a pilonidal cyst in the sacral area. Tr. 387. As the ALJ indicated, Dr. Hughes assessed Plaintiff with chronic HS "in various stages of healing," but he demonstrated a normal gait, with no effect on his ability to sit, stand, or walk, with no deficits in motor strength or range of motion. Tr. 17, 389-91. The ALJ could reasonably interpret Dr. Hughes' examination results as failing to support a disabling pain condition. Tr. 17.

The ALJ also discussed November treatment records from David Oehling, M.D., who was consulted for possible surgical repair of Plaintiff's inguinal hernia that was complicated by an HS flare-up in Plaintiff's suprapubic area. Tr. 17, 262. Dr. Oehling's November 7, 2013 treatment records reveal that he recommended a two-week course of antibiotics with twice daily medicated showers. Tr. 262. As the ALJ correctly indicated, two weeks later on November 21, 2013, Dr. Oehling noted improvement with Plaintiff's HS and hernia. Tr. 264. Dr. Oehling indicated there were no "overt abscesses" in his inguinal area or upper thigh, the areas were much less inflamed following his recommended HS treatment, and the hernia was reducible, thus he did not recommend surgical hernia repair. Tr. 264. As the ALJ correctly discussed, Plaintiff acknowledged at the hearing that his hernia symptoms had improved. Tr. 17. Therefore, based on the lack of significant clinical findings, the ALJ could conclude that Plaintiff's subjective pain complaints were not supported by the record, and reasonably discounted his credibility on this basis. Indeed, as the ALJ accurately noted, no physician has opined that Plaintiff is unable to sustain regular employment. *See,*

*e.g.,* Tr. 315-20, 308. The ALJ's findings are wholly supported by substantial evidence, are a rational interpretation of the evidence, and will not be disturbed. *Molina,* 674 F.3d at 1111. When the ALJ's second and third rationales are combined, they provide specific, clear and convincing support for the ALJ's adverse credibility determination.

Fourth, the ALJ discounted Plaintiff's testimony regarding his symptoms was inconsistent with his reported activities of daily living. Daily activities may serve as a basis for discrediting a claimant where they are inconsistent with the claimant's alleged symptoms. *Molina,* 674 F.3d at 1112. The ALJ may properly discredit a claimant's testimony where the claimant reports participation in daily activities that are transferrable to a work setting, or those activities contradict a claim of a totally disabling impairment. *Id.* at 1113. Here, the ALJ detailed several activities, including Plaintiff's ability to drive, operate a riding lawn mower, use the computer frequently, and work 10 hours a week at his family business as indicating he retains significant work-related functioning. Tr. 17. As the ALJ indicated, Plaintiff's activities are inconsistent with his allegations that he is bedridden or restricted to a sub-sedentary lifestyle by his symptoms. For example, the ALJ detailed Plaintiff's ability to venture outside multiple times a day, drive when necessary, and go shopping online or in stores. The ALJ's findings are wholly supported by substantial evidence in the record, and the ALJ could reasonably conclude that Plaintiff's allegations are inconsistent with his allegations of total disability, and that he engages in activities that are transferrable to work setting.

Fifth, the ALJ discredited Plaintiff's treatment has largely been conservative in nature, and thus is not disruptive to a normal workday or workweek. Tr. 18. Evidence of a claimant's favorable response to minimal and conservative treatment can undermine credibility. *Tommasetti,* 533 F.3d

at 1039-40. Here, the ALJ detailed that June 3, 2015 medical records from Richard Schultz, M.D., indicated that his recommended course of treatment included oral antibiotics for inflammation and antibacterial wipes. Tr. 18, 305. As the ALJ correctly indicated, Dr. Schultz observed that Plaintiff was in no acute distress, was alert and oriented. The ALJ's findings are backed by substantial evidence, are a reasonable interpretation of the evidence, and will not be disturbed. *Id.* at 1040 (noting conservative treatment including anti-inflammatory medication and physical therapy undermined allegations of disabling pain); *accord Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (holding that evidence of conservative treatment may be "sufficient to discount a claimant's testimony regarding severity of an impairment"). The ALJ's fourth and fifth reasons further bolster the ALJ's adverse credibility determination.

Finally, the overall record contradicts Plaintiff's argument that the ALJ erroneously focused on a few symptom-free periods to discount Plaintiff's credibility. *Garrison*, 759 F.3d at 1009. (determining that court may not affirm nondisability determination by "isolating a specific quantum of supporting evidence"). Indeed, the medical record here demonstrates quite the opposite: Plaintiff has long symptom-free periods, punctuated with occasional, brief flare-ups of HS symptoms. For example, in the medical record before the Court, there is no indication that Plaintiff sought treatment for his HS from April 2009 to January 2012 (Tr. 311-15, 298), from May 2012 to November 2013 (Tr. 387-89, 271-73), and again from November 2013 to June 2015 (Tr. 264, 275, 308). Significantly, the record also reveals that when Plaintiff is experiencing an HS flare-up, he has responded within weeks to antibiotic treatment. Tr. 264, 292-93, 298. Therefore, contrary to Plaintiff's assertion, the ALJ did not isolate a few instances of improvement.

In summary, the Court concludes that the ALJ has provided numerous specific, clear and convincing reasons backed by substantial evidence in the record as whole for discounting Plaintiff's credibility. The ALJ did not err.

III.     **The ALJ's Hypothetical to the VE Contained all Properly Credited Evidence**

Plaintiff argues that the ALJ elicted testimony from the vocational expert ("VE") that did not include all of the limitations described in his subjective statements, particularly his statement that he is bedridden three to five days every six week period. According to Plaintiff, when this limitation is included, it is clear he is unable to sustain work, and the ALJ erred in relying on the VE's testimony to find that he can perform his past relevant work.

As discussed above, the Court has not identified any harmful errors in the ALJ's evaluation of the evidence, including discounting Plaintiff's testimony. The hypothetical posed to the VE included all of Plaintiff's limitations credited by the ALJ and supported by substantial evidence in the record. *Britton v. Colvin*, 787 F.3d 1011, 1013-14 (9th Cir. 2015); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Accordingly, the ALJ could rely upon the VE's testimony. The ALJ did not err at steps four and five.

////

////

////

////

////

////

////

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to Plaintiff is AFFIRMED.

IT IS SO ORDERED.

DATED this _21_ day of NOVEMBER, 2017.

Malcolm F. Marsh
United States District Judge